Curia, per

Evans, J.
The indictment charges that the defendant “wilfully and unlawfully did game with a certain negro slave,” “ and did then and there bet on the said game.” The Act of 1834 (7 Stat. 469,) is in these words: “If any white person shall game with any free negro or person of color, or slave, or shall bet upon any game played, wherein one of the parties is a free negro, person of color, or slave, or shall be willingly present, aiding and abetting, where any game of chance is played, as aforesaid, such person shall,” &c.
The first motion is in arrest of judgment, because the indictment does not state the game played at, which was necessary to justify the Court in pronouncing judgment.
The second is for a new trial, because the indictment alleges that the defendant did also “ bet on the said game, when there was no proof of any betting, nor was there any proof that any game was played at by the defendant.”
*194 As to the ground for a new trial, I have only to remark that the proof was clear that the defendant played at cards with the slave mentioned in the indictment, and that it was decided in Nates’s case (3 Hill, 200,) that it was not necessary to allege or prove there was any betting.
The first ground is not so clear. The rule which seems to be laid down, by all the elementary writers on Criminal Pleadings, is, that every criminal offence is the doing or omitting to do some act which the law forbids or commands; and in an indictment all the facts and circumstances entering into the definition of the crime must be set out. (Arch. Cr. PL 41.) If time or place or the means enter into the character of the offence, then they must be set out. But if the act be prohibited without reference to the time, place or manner of committing it, then these circumstances may be omitted. This is illustrated by the following cases: Rex vs. Mason, (2 T. R. 581,) was an indictment for obtaining money by false pretences: it was held that the alleged false pre-tences should be set out, because, without them, there would be no crime. But in the King vs. Gill & Henry, (2 B. & Ald. 204,) the indictment alleged that the defendants did unlawfully conspire and combine together, by divers false pretenses and subtle devices, to obtain money. This was held sufficient, because the crime consisted in the conspiracy and combination, and not in the means by which it was accomplished. In the State vs. Cantrell, (2 Hill, 389,) the indictment was on the Statute 22 and 23 Car. 2, ch. 7, which provides that “if any person, in the night time, maliciously, unlawfully and wilfully shall kill or destroy any horse,” &c., it was held that the manner of killing need not be set out, because that was no part of the crime. Any killing, if of malice, and wilful, was within the meaning and words of the statute. But in an indictment for gaming, under the Act of 1816, (6 Stat. 27,) to charge a man with playing at cards, without alleging that it was done at a tavern or some of the places enumerated in the statute, will not do; because the place is a constituent part of the offence. Every playing at cards is not prohibited by that statute; it is only criminal when done at par. *195 ticular places; the place, therefore, must be alleged, because that enters into the definition of the offence.
So also in Nates’s case, (3 Hill, 200,) which was an indictment under this same Act of 1834, it was held not to be necessary to allege that there was any betting, because the offence was complete without it. “ The general rule seems to be, that in an indictment for an offence created by a statute, it is suificient to describe the offence in the words of the statute; and if, in any case, the defendant insists on a greater particularity, it is for him to shew that, from the obvious intention of the Legislature, or the known principles of law, the case falls within some exception to the general rule.” This is what is said by Wharton in his Amer. Crim. Law, 91, and is in conformity with the English and our own decisions. Cantrell’s case (2 Hill, 389).
Let us now test this case by these rules. The indictment is framed in the words of the statute, and that, according to the general rule, would be sufficient. But the reply to this is, that game means a sport or amusement — and, taking the whole clause, it is manifest the Legislature meant by the word game some unlawful game, and this ought to be set out, that the Court may know whether the game is one prohibited by law. Assuming that, by the word ‘game,’ the Legislature meant playing at some unlawful or prohibited game, it is immaterial what the game was. It would be equally within the prohibition whether played with cards or dice, or at any gaming table, such as are described in the Act of 1816, or by whatever name it may be called. According to the principles above stated, the kind or name of the game is no part of the offence, any more than whether there was betting, which in Nates’s case was held to be an unnecessary allegation. There is nothing in the English cases which sheds much light on this subject, except those before quoted as to the requisites of an indictment; but there are some American cases very much, if not exactly, like the one under consideration. The State vs. Dole (3 Blackf. 294,) was an indictment against a grocer for suffering gaming in his shop. The iudictment was quashed on the Circuit, because it did not set out *196 the particular game played. But in the Supreme Court it was held to be sufficient, because all games were unlawful in such places. The State vs. Bougher (3 Blackf. 307,) was an indictment for gaming at a tavern. The words of the Indiana statute are, “ Any person who shall play at any game,” &c. The indictment charged the offence in the words of the statute, without stating what game was played. It was held sufficient, because the words were general, and included all games.'
By the Act of 1834 the Legislature intended to punish the playing at any game or sport with a free negro or slave, or they meant only such games as are prohibited, and therefore unlawful, as seems more likely, and as is intimated in Nates’s case. In either case, the prohibition being general, it is unnecessary to allege the particular game, because the crime consists in playing any game or any unlawful game with a free negro or slave. In the King vs. Eccles, cited in 6 T. R. 628, Buller said, “the means are matter of evidence to prove the charge, and not the crime itself.” So in this case, I would say that the game played is evidence to prove the defendant’s guilt, but does not enter into the definition of the crime. The motions are therefore dismissed.
O’Neall, Wardlaw and Withers, JJ., concurred.

Motions dismissed.